\*SELLS, administrator of SELLS, *against* THE ADMINISTRATORS OF HUBBELL and others.

[ \* 394 ]

Where a party has been discharged under the insolvent act, and assigned his property pursuant to the act, an application cannot be sustained, in relation to his property or interest, without making his assignees parties.

*JOHN BEDIENT* and *Walter Hubbell* were copartners in trade. *Hubbell* died in *August*, 1803, intestate, leaving a widow and two children. *Bedient* was discharged under the insolvent act, on the 24th of *October*, 1807, and *David R. Lambert* and *Wm. M'Intire* were his assignees. The partnership, in the lifetime of *Hubbell*, was indebted to *John Sells*, deceased, in two notes, on which separate judgments were obtained at law, against *Bedient*, as surviving partner, in *May*, 1807. On these judgments executions were issued, and returned *nulla bona*. In the inventory which *Bedient* exhibited, as insolvent debtor, no real property was mentioned, nor was it mentioned that he was a creditor of the firm of *Bedient & Hubbell*. *Sells* then filed his bill in chancery against all the defendants, and, after his death, the plaintiff, as his administrator, obtained satisfaction of the judgments, from the representatives of *Hubbell*, under a decree of this Court. In the suit in chancery, thus instituted by *Sells*, *Bedient* in his answer set up his discharge under the insolvent act, and his assignees pleaded no assets.

It being since discovered, according to a suggestion on the part of the representatives of *Hubbell*, that *Bedient* had real property in the city of *New-York*, at the time of the docketing of the two judgments, in *May*, 1807, which was not mentioned in his inventory, exhibited under the insolvent act, nor claimed by, and probably not known to, \*his assignees; the representatives of *Hubbell* applied to this Court for an order, requiring *Sells*, the administrator, &c., to assign over to them the judgments, so obtained at law against *Bedient*, and so satisfied under a decree in chancery, out of the assets of *Hubbell*, the deceased partner. A copy of the

*March* 11th.

[ \* 395 ]

1817.

SELLS
v.
ADMINS. OF
HUBBELL.

petition, with notice of the application, was served upon *E. W. King*, the solicitor of *Sells*, in the above suit, and no opposition being made, an order was obtained, as by default, on the 13th of *May* last, directing such an assignment.

The assignment was not, in fact, made, and *Sells*, the administrator, in his affidavit of the 26th of *December* last, stated, that he had never assigned the judgments, nor had notice of any order to assign. It appeared, however, that *A. Burr*, as attorney for the representatives of *Hubbell*, had revived the judgments, by *scire facias*, at law, in the name of *Sells*, since the 13th of *May* last, and had obtained judgments on two *notes*, and issued executions against real property in the city of *New-York*, said to belong to *Bedient*, since the original judgments were obtained in *May*, 1807, and prior to his discharge under the insolvent act, in *October*, 1807.

*E. W. King*, as solicitor for " *Bedient*, and his assignees," now moved to vacate the order of the 13th of *May*, as irregularly obtained, on an affidavit by *Bedient*, that he had no knowledge of the order of the 13th of *May* last, or that the same was about to be applied for, until after the revival of the judgment by *scire facias*, as aforesaid, and executions taken out against certain real property of his wife, and that he was not indebted to the firm of *Bedient & Hubbell*, at the time of the death of *Hubbell*, but he believed that, upon a fair statement of accounts, there was a considerable balance due from the estate of *Hubbell* to him, or his assignees, including the amount of the said judgments. *The names of the assignees were not *mentioned*, and no affidavit by them was produced.

[ * 396 ]

*Burr*, contra, opposed the motion: the affidavits which he read related only to the fact of the service of the notice on *King*, the solicitor for *Sells*, and as to the improbability that the firm of *Bedient & Hubbell* should have been indebted to *Bedient*.

It was not pretended that *Bedient*, or his assignees, had any notice, in fact, of the motion for the order of the 13th of *May*, unless the service on *King* was good notice to them.

In the answer of " *John Bedient*, (who was impleaded with *John Sells*,) to the bill of complaint of *James Robertson*, *John Brown*, and *Nancy*, his wife, (which said *Robertson* and *Nancy* are administrators of *Walter Hubbell*, deceased,) *Horatio William Law Hubbell*, and *Ferdinand Hubbell*, infants and heirs at law of *Walter Hubbell*, deceased," (to which answer *King* is solicitor,) *Bedient*, among other things, stated as follows : " and he likewise admits, that in

306

his statement made to the said recorder, at the time of presenting his aforesaid petition, he made no statement of the accounts between himself, the said *John Bedient*, and the estate of the said *W. Hubbell*, deceased, because all such accounts had been previously closed and balanced."

THE CHANCELLOR. The application to vacate the order of the 13th of *May* last, is made on behalf of *John Bedient*. But provided the executions, to be issued at law, in the name of *Sells*, are confined (as the order of the Supreme Court, of the last term, made before this present application was made, confines them) to real property, whereof *Bedient* was seised between the date of the judgments and the date of his discharge under the insolvent act, he has no concern with this question. If he owned any such property, it must have passed to his assignees, *or been by him sold in the mean time, subject to the judgments. It is, therefore, the assignees, or the purchasers, who have an interest in discharging that order, and they are not parties to this application. It is true, that the notice of the motion is stated to be by the solicitor for " *John Bedient* and his assignees ;" but the assignees are not so much as named, and we have no affidavit denying that they were not apprized of the intended application for the order in *May,* or that they have any ground to object to the claim for contribution set up by the representatives of *Hubbell*. I cannot, therefore, consider that the motion ought to prevail, in respect to the assignees, for they are not properly parties to the motion ; and if they were, they have shown nothing entitling them to prevail.

[ * 397 ]

If this was a case in which *Bedient* had an interest in the question, I should think it would not be very extravagant to consider the service of the notice of the motion, in *May,* on *E. W. King,* as sufficient notice to him, because it appears that *E. W. King* was his solicitor to an answer put in by him to a bill, by these very representatives of *Hubbell,* on the subject matter of these judgments. With respect to any equitable objection to the claim for contribution, I think it is clear that *Bedient* has none, nor have those who now represent him. The debt of *Sells* was the debt of the co-partnership of *Bedient & Hubbell*. It was the common equal debt of both the partners, and the consideration for which it was created is presumed to have enured equally to the benefit of both, and the contribution ought to be equal. The estate of each partner ought to be charged with the debt in equal portions, provided their interests in the co-partnership were equal, and their accounts as between each other were equal. This is the intendment, in the first instance ; and it would be a thing almost of course for equity

1817.

SELLS
v.
ADMINS. OF
HUBBELL.

[ * 398 ]

to allow the representatives of a deceased partner who had to pay the whole debt to be substituted in the place of the creditor in order to *recover, from the surviving partner, or his estate, *a moiety* of what they had paid. Nothing could stay this proceeding but the allegation of the surviving partner that he was the creditor partner, and that the estate of the deceased partner owed him a balance, as much or more than it had been obliged to pay. This would render it requisite to take and state an account between the partners, before this Court could interfere, in any way, to enforce the claim for contribution.

But, in the present case, the evidence before me is against any such well-founded pretension on the part of *Bedient*. In his affidavit on this motion, taken on the 16th of *January* last, he does, indeed, say, "that he was not indebted to *Walter Hubbell* at the time of his decease, nor to the firm, and that, upon a fair statement of accounts, he believes there is a considerable balance due from the estate of *Walter Hubbell* to him, or his assignees, including the amount of the said judgments." If this was all he had ever said, I should think an account ought to be previously taken; but his language, on other occasions, equally solemn, has been different. In his affidavit, made on the 27th *December* last, in the Supreme Court, in order to set aside the proceedings at law, under the order of the 13th of *May*, he stated, "that, at the death of *Hubbell*, the copartnership property was insufficient to pay the debts of the firm, and that, on the final settlement of the concern, he was not indebted to the estate of the deceased partner.

He here admitted that there had been a final settlement of the copartnership, and he made no pretence that the deceased partner was a debtor to the firm. And in his answer in chancery, to which I have already alluded, he admits, that in his proceedings under the insolvent act, " he made no statement of the accounts between himself and the estate of *Walter Hubbell*, deceased, because all such accounts had been previously closed and balanced."

[ * 399 ]

*I need not, however, pursue this point. I have only looked into the facts, so far as to satisfy myself, that no injustice will probably follow from denying the motion, on the strict formal ground, that *Bedient* is not entitled to make the motion, and that his assignees, who represent his interests, are not parties to the motion, and have not shown any want of notice.

But the order for the assignment must be so taken as to operate only on a moiety of the judgments; and if it was not so done, it was taken to an extent beyond what the party was entitled to, even upon his own showing. It is not

alleged, or proved, that on a settlement of accounts, *Bedient* was indebted to *Hubbell*; and all that the representatives of *Hubbell* could ask for, in the first instance, was contribution for a moiety of what they had paid upon the judgments.

The motion, on the part of *Bedient*, to set aside the order of the 13th of *May* last, is, consequently, denied, with costs; and it is declared that the representatives of *Hubbell* are entitled to recover from the estate of *Bedient*, under the assignment of the judgments, a moiety only of the debt which the representatives of *Hubbell* have been obliged to pay to *Sells*, under the decree of this Court. That is what the counsel for these representatives admits to be the extent of their claim, and that is the extent to which the order of the 13th of *May* is to be carried.

Order accordingly.