## Kyner *against* Kyner.

The right to substitution is founded upon a mere principle of equity and benevolence, and not necessarily upon either privity or contract between the parties.

There can be no such thing as substitution to the right of a party who is not wholly satisfied. The court cannot interfere with his security while a part of his debt remains unpaid.

ERROR to *Cumberland* county.

Feigned Issue. James Laurie's Executors *v.* John Kyner, George Kyner and Philip Kyner, Executors of Conrad Kyner. This was a question of substitution which arose upon the following facts: In 1813 Laurie's executors obtained a judgment against Conrad Kyner for the sum of 833 dollars, which was a lien on a tract of land, the interest of which was payable annually to Ann Laurie, during her life, and the principal at her decease. Conrad Kyner conveyed the land upon which this judgment was a lien in 1816, by deed, with a covenant of general warranty, to Jacob Kyner. In 1827 Jacob Kyner conveyed by deed, with general warranty, part of the land to John Craig. The judgment was regularly revived with notice to the terre-tenants. Jacob Kyner paid the annual interest to Ann Laurie for several years, amounting to 356 dollars, and John Craig paid interest upon it to the amount of 397 dollars. Craig, also, after the widow's death, in 1835, paid part of the principal, 104 dollars, and afterwards transferred all his right, which he had by virtue of his said payments, to Jacob Kyner. Upon these facts Jacob Kyner applied to the court of common pleas, to be substituted to the rights of the plaintiffs in the judgment, to enable him to proceed against the other estate of Conrad Kyner,

deceased, to collect the money which had been paid by himself and Craig on account of the judgment.

The executors of Conrad Kyner resisted this application on two grounds: first, because, as a matter of fact, John Kyner, one of the executors, by an arrangement with the other heirs of Conrad Kyner, became liable and promised to pay this judgment to Jacob Kyner, who accepted him as the payor, and released his father, Conrad Kyner's estate: second, that upon the facts stated, in law, Jacob Kyner was not entitled to substitution.

The court below, in order to try the questions of fact and law, directed an issue between the parties to be tried by a jury, to whom the court delivered the following charge:

" The power of substitution arises out of the control of the court over their process, and the right depends upon *privity*, and not upon *contract*. No new right can be created by substitution; it is used as a mere instrument to effect equity. Substitution cannot be adopted as a new and substantive remedy between strangers; but they are left to their action. The right to a trial by jury is a constitutional right, which cannot be taken away.

"The right of Jacob Kyner, in this case, is a new and substantive right, growing out of his warranty: he has a clear, untrammelled remedy by action: he has no need to go into equity.

" But Jacob Kyner is a stranger to any judicial proceeding in the case; he is no party to any process or proceeding on which he can demand the summary interposition of the court; and he stands in no *privity* in blood, in estate, or in law, with any one who is a party to any process or proceeding in court; in legal contemplation he is a stranger. Other strangers having a cause of action are compelled to institute and prosecute suits for redress of injuries sustained. We know of no reason why Jacob Kyner should be exempted from the operation of the general principle: we think it is not a case of substitution; that it is not demandable by the 'laws and usages' of Pennsylvania, all the facts on the part of the plaintiff being admitted.

" There can be no substitution as to the part paid, there being a residue of the debt still due and unpaid to the original plaintiffs: it is their judgment until all is paid; until the plaintiffs are satisfied; and no one can force himself into the place of the plaintiffs, either in exclusion of them, or as co-partners with them. There being no evidence of any assent or dissent of the plaintiffs to the original suit upon this trial, does not alter our view as to the correctness of the proposition as above stated.

" It is said by the plaintiff, as to the 104 dollars 16½ cents mentioned in the receipt to John Craig, on the back of the assignment of Laurie's executors to Dr Stewart, dated the 14th of September 1835, that at least the plaintiff must recover as to so much, there being a transfer by David Kenower's executors, &c., per indorsement. We do not think so.

" John Craig, the alienee of Jacob Kyner, who took the assign-

ment, had a simple covenant of general warranty. His warranty could not be broken but by eviction. He had no cause of action: and if he had none, he could transfer none to Jacob Kyner. John Craig could have no claim to substitution under the facts."

This opinion was excepted to by the plaintiff. Verdict for defendants.

*Alexander*, for plaintiff in error, cited 4 *Johns. Ch.* 130, 334, 530; 1 *Johns. Ch.* 409, 435; 2 *Paige's Ch.* 491; 7 *Johns. Ch.* 41; 2 *Penns. Rep.* 507.

*Watts*, for defendant in error, relied upon the same grounds taken in the court below; that Jacob Kyner's deed of general warranty gave him no right to substitution; and if it did, but part of the judgment was paid, and therefore the plaintiff's rights could not be interfered with, by substituting a stranger to them.

The opinion of the Court was delivered by

KENNEDY, J.—We are clearly of opinion, that the court below were right in deciding, that Jacob Kyner, for whose use the *scire facias* was sued out, was not entitled to be substituted either qualifiedly or absolutely in place of the executors of James Laurie, plaintiffs in the judgment against the executors of Conrad Kyner. And though we approve of the decision, yet I cannot say that we are fully prepared to sanction every thing that is laid down and advanced by the court in support of it. When the court say that " the power of substitution arises out of the control of the court over their process, and the *right* depends upon *privity* and not upon *contract*," it would seem as if they thought that the right of substitution could not be maintained in any case, without the existence of some sort of privity. The privity here spoken of by the court, must be understood to be, as I apprehend, a privity existing either between the party wishing to be substituted and the party whose right or security he wishes to be permitted to use, or between him and some judicial proceeding in the case, by his being a party thereto. For the court, in explanation of their position, that the right depends upon privity, say "no new right can be created by substitution. It is used as a mere instrument to effect equity. *Substitution* cannot be *adopted* as a new and substantive remedy *between strangers,* but *they* are *left to their action.*" And again, the court say, " Jacob Kyner is a *stranger* to any *judicial proceeding in the case.* He is no *party to any process* or *proceeding* on which he can demand the summary interposition of the court. And he stands in no *privity* in blood, in estate, or in law, with any *one who is a party to any process or proceeding in court.* In legal contemplation he is a stranger."

That there need be no such privity, as the court below seem to think was necessary to enable a party to claim the right of substi-

tution, and to authorize the court to grant it, will appear to be very fully established by a reference to the cases decided on this subject, and the rule laid down in them, which seems to have no regard for it whatever. In Reeve *v.* Reeve, 1 *Vern.* 219, S. C., somewhat differently reported in 2 *Ventr.* 363, an early case on this subject, where A charged lands in D, with a portion of 3000 pounds for a daughter by his first wife, and marrying again, settled a part of the same lands as a jointure upon the second wife, who had no notice of the charge. A, believing however, that the portion would have a preference over the jointure by his will, gave other lands to his wife in lieu thereof. The wife, however, after the death of A, finding that the settlement made in her favour on her marriage, though subsequent in time, was good against the daughter's portion, it being merely voluntary, agreed with the heir to claim her jointure for the purpose of defeating the daughter of her portion. And the court thereupon decreed, that the daughter should have the lands devised in the will to the wife, until her portion was paid. This case is recognized by Lord Hardwicke in Lanoy *v.* The Duke and Duchess of Athol, 2 *Atk.* 447. Yet it is manifest that no sort of privity existed between the daughter and the widow; nor was the daughter a party to any process or judicial proceeding in the case, excepting to her own application to be subrogated to the right of the widow under the will. The principle which governs in all cases of substitution, is one of equity merely; and is such as will compel the creditor, who has a lien on two different tracts of land, when another creditor of the same debtor has a lien of a younger date on one of those tracts only, either to proceed against the tract on which the junior creditor has no lien, if necessary to enable the latter to collect his debt, or otherwise, in case the former should elect to take his whole demand out of the tract on which the junior creditor has a lien, the latter, by paying the amount of it, or if not convenient for him to do so, after it has been collected from the tract on which he had a lien for his claim, will be substituted in place of the senior creditor, and by this means permitted to proceed on his lien against the land on which the junior creditor had no lien, in order to collect his debt, or so much of it, as the value of the land taken from his lien may have been equal to. " This is a rule," says Chancellor Kent, " founded on *natural justice,* and I believe it is recognized in every cultivated system of jurisprudence;" Cheesborough *v.* Millard, 1 *Johns. Ch. Rep.* 412–13. And in page 414, of the same case, he repeats, " this rule of substitution rests on the basis of *mere equity* and *benevolence."* And indeed it is evident, that it is nothing more than the application of the general principle, which seems to have met with almost universal approbation, and is acted on daily in the ordinary cases which are continually occurring, that if a party has two funds, he shall not by his election disappoint another who has one fund only, but the latter shall stand in the place of the former,

[Kyner v. Kyner.]

so as to resort to that fund which can be affected by him alone. Sagitary *v.* Hyde, 1 *Vern.* 455; Mills *v.* Eden, 10 *Mod.* 488; Attorney General *v.* Tyndall, *Amb.* 614; Aldrich *v.* Cooper, 8 *Ves.* 388, 391–5; Trimmer *v.* Bayne, 9 *Ves.* 209; Cheesborough *v.* Millard, 1 *Johns. Ch. Rep.* 412–13. It is the same principle also, which regulates the marshalling of assets in favour of simple contract creditors, whereby they are secured in the payment of their claims, where specialty creditors exist, who have a preference at law; for substitution is but the marshalling of *securities* with a view to secure the several claimants in the payment of their respective demands, which is very closely allied to the doctrine of apportionment and contribution between sureties. 1 *Story's Eq.* 588, sect. 633. And, as Mr Justice Story says, " does not stand upon any notion of mutual contract, express or implied, between the sureties, to indemnify each other in proportion, (as has been sometimes argued,) but it arises from principles of *equity* independent of contract. *Ibid.* 472, *sect.* 493.

In order, however, to show still further that there is no sort of *privity* connected with the right of substitution, we may take the case put by Mr Justice Story in *sect.* 633, already referred to, where, if A has a mortgage upon two estates for the same debt, and B has a mortgage upon one only of the estates for another debt, equal in amount to the value of the latter estate, while the other estate is amply sufficient to satisfy A's debt; B has a right to throw A, in the first instance, for satisfaction upon the estate which B cannot touch; because it can make no difference to A, out of which of the two funds he shall receive satisfaction; and by compelling him, under such circumstances, to resort for it, to the one on which B has no claim, no injustice is done either to A or the debtor; and B, at the same time, is thereby made secure in the payment of his claim, in the only way that it was practicable for him to receive it. Thus A is only made to act in conformity to the principles of equity and natural justice; and to exercise his right according to the common civil maxim, *sic utere tuo, ut alienum non lædas;* or agreeably to a precept, which, from its authority, ought certainly not to be less binding, " Do unto others, as you would they should do unto you." Now it is perfectly clear here, that there is no privity of any kind between A and B, or connection either direct or indirect, except that of their being creditors of the *same* debtor; which is, perhaps, necessary in most, if not in all cases, to authorize substitution. Dorr *v.* Shaw, 4 *Johns. Ch. Rep.* 17, 20; *Ex parte* Kendall, 17 *Ves.* 520; Sterling *v* Brightbill, 5 *Watts* 229; 1 *Story's Eq.* 525, sect. 642, 643. It is also equally clear, that B need not be a party to any process or proceeding commenced in the court, where A has commenced his proceeding, with a view to enforce the payment of his claim. So upon the same principle of equity a purchaser for a valuable consideration, of one of the estates previously mortgaged for the same debt, not exceeding in

VI.—2 D

amount the value of either estate, would have a right to require that the mortgagee should go against the estate still owned by the mortgagor.

In regard to judgment creditors, however, though the same principle is applicable, yet the mode of bringing it into operation and giving effect to it, may be different from that which it might be proper for the court to direct in the case of mortgage creditors in Pennsylvania. Because a creditor having acquired, by his judgment, a lien upon two tracts of land, it may be very material to him, whether he shall proceed by execution against the one or the other, in order to collect his debt; notwithstanding, either may be of sufficient value to satisfy it; for if the rents, issues, and profits beyond all reprizes of the one be sufficient, within the space of seven years, to satisfy his debt, he cannot have it paid at once by a sale of the land, but must wait and take it out of the rents, issues, and profits, which may prolong the payment thereof, for the space of seven years; but by proceeding against the other tract, which may bring as much money, on a sale thereof being made as the first, but being wild and unimproved land, will yield no annual profit, and must, therefore, be sold, he is thus enabled to receive the whole of his claim in the course of seven or eight months at farthest. In such case, therefore, it is not likely that the court would interfere on behalf of the younger judgment creditor, who had a lien only on the unimproved tract, though not of more value than sufficient to satisfy his claim, and compel the elder judgment creditor to proceed against the improved tract to make his claim out of it; because, under such circumstances, it would be doing great injustice to him, by hindering and delaying him in the collection of his debt, which he, in justice, had a right to receive as early as he could possibly obtain it from that portion of the debtor's estate within his reach, and most likely to produce it.

If, however, the junior creditor were, in such case, to pay the elder creditor the amount of his judgment; or if it should happen that the latter refused to receive it, and the former were then to bring and make a deposit of it in court, the court upon this being done, would subrogate the junior creditor to all the rights of the elder creditor, so that he might have it in his power to proceed on the elder judgment, as well as his own, to collect the amount of both as he pleased. And if the junior creditor should not be able, or find it convenient, to pay the elder the amount of his claim beforehand, the court, after the latter had collected it by a sale of the unimproved land, upon which alone the junior creditor had a lien for his demand, would still possibly permit the latter to use the elder judgment, so as to collect the amount of his own judgment by means of it.

This right of substitution then, being grounded entirely upon principles of equity, is not, and indeed from the very nature of the foundation of the right, cannot be restricted to this case of two or

[Kyner v. Kyner.]

more several judgment claimants. against the same defendant, whose claims were originally founded entirely on contract, but must be extended to the case of those whose judgments have been obtained in actions founded on torts as well as upon contract; because the plaintiff who has recovered damages by judgment, in an action of trover or trespass *de bonis asportatis,* for the loss of his property, of which he has been deprived by the illegal conduct of the defendant, has just as much right both in equity and in law to be satisfied, the amount of the compensatory damages at least, recovered on such account, as if his judgment had been for the price of the property agreed to be given on a sale and delivery thereof, made by him to the defendant in the judgment.

This being the case, it shows that substitution may be decreed, where no contract of any kind was ever entered into, to connect with each other any of the parties concerned; and where no sort of privity has ever existed, saving that of each plaintiff being a party to his judgment with the same defendant therein; which we have seen above is not always the case; as for instance, in the case of mortgage creditors, where it is not necessary that the party, applying to be substituted, should have any judgment at all nor yet be a party to one; and likewise in the case of a subsequent vendee of one of the tracts who has bought with a covenant on the part of the vendor that it was free from incumbrances.

The court below, however, were perfectly correct, we think, in deciding that substitution cannot be made as long as the debt of the party, whose rights are claimed to be used, for the purpose of protecting or securing junior claims of the applicant for substitution, remains unsatisfied, though it be in part only; for until he shall be wholly satisfied, there ought and can be no interference with his rights or his securities, which might, even by bare possibility, prejudice or embarrass him in any way in the collection of the residue of his claim. Now it is obvious, that such interference cannot be avoided or guarded against with certainty, except it be by the court's refusing to substitute upon any terms whatever, as long as any part of the elder creditor's claim remains unpaid. For this reason then, even if there were no other, we think that the plaintiff in error here had no right to substitution.

But it is also worthy of remark, that in this case, the plaintiffs in the judgment, that is, the executors of James Laurie, to whose rights, under the judgment, Jacob Kyner, the plaintiff in error, wishes to be subrogated, never had any notice of his application for such purpose; and for ought that appears to the contrary, remain ignorant of the proceeding herein down to the present day. This of itself would have been an insuperable objection to the court's undertaking to deal with the rights of the plaintiffs in the judgment, and to transfer or give the benefit of it, either in part or in whole, qualifiedly or absolutely, to Jacob Kyner, the plaintiff in error, who must be regarded as a stranger to it. It would have

been a plain and palpable violation of every principle of natural justice to have made a decree which might have affected the rights of the plaintiffs in the judgment without affording them an opportunity of being heard.

Judgment affirmed.