vice of all process that may be served upon it. In this particular the case of Day v. Newark India Rubber Co., above cited, differs from the one under consideration—there was no express agreement on the part of the corporation to accept service—the jurisdiction could only be sustained upon the theory that the acceptance of the franchise implied an agreement to be bound by the conditions of the statute. With deference to conflicting opinions, the reasoning of Judge Woods in the case cited from his reports seems to me unanswerable, and for the present I shall act upon it as the law in these cases.

## Case No. 4,905.

### FONTAINE v. ARESTA.

[2 McLean, 127.] [1]

Circuit Court, D. Illinois. June Term, 1840.

Mr. Logan, for plaintiff.
Mr. Thomas, for defendant.

OPINION OF THE COURT. This action of debt was brought on an instrument, under seal, for the payment of a certain sum, as principal, not yet due; and the payment of the interest annually. The defendant filed a special demurrer, which raises the question, whether an action of debt for the interest can be sustained before the principal becomes due. The rule seems to be well settled that debt will not lie for money, payable by instalments, until they shall all become due, unless the payment be secured by a penalty. 1 Chit. Pl. 129; Rudder v. Price, 1 H. Bl. 547; 2 Saund. 303, note 6; 3 Coke. 22a; Selw. N. P. 531, note; Bac. Abr. 669; 3 Black. 168. Where a sum of money is payable by instalments, and the payment is secured by a penalty, debt may be brought for the penalty. Bac. Abr. 699, "Debt" B.; Com. Dig. F. In 1 Bin. 152, the court held, that where the condition of a bond was for the payment of

interest annually, and the principal at a distant day, the interest might be recovered, before the principal was due, by an action of debt on the bond. In this case the payment of the principal and interest was secured by a penalty. Where there is no penalty in the bond, payable by instalments, covenant is the proper action to recover the instalments as they shall become due. If the instalment be due on a simple contract, assumpsit is the proper action. This is a technical rule, as applied to the action of debt, but it seems to be too well established to be disregarded. The demurrer must be sustained.

## Case No. 4,906.

### In re FOOT et al.

[8 Ben. 228; [1] 12 N. B. R. 337; 1 N. Y. Wkly. Dig. 76.]

District Court, N. D. New York. July, 1875.

W. & J. D. Kernan, for petitioners.
Dennison & Everett, for assignee.

WALLACE, District Judge. For the purpose of raising money for the firm of Foot, Doud & Co., the above named bankrupts, [Norman B.] Foot, one of the firm, endorsed their paper, and pledged securities belonging to himself individually as collateral for payment of the paper. After the adjudication of bankruptcy herein, the holders of the notes sold the securities thus pledged, and realized upon the sale the sum of $18,281, being $104 in excess of the amount due upon the notes. The separate creditors of Foot now represent that his separate estate is insufficient to pay his individual debts, and insist that the amount realized from the securities thus sold, be appropriated from the fund belonging to the joint estate to that of the separate estate of Foot. They maintain, that it was the duty of the assignee in bankruptcy to have exonerated the separate estate from the lien of the pledgees out of the funds of the joint estate; and they urge that, in any event, Foot, as surety for the firm, when the notes were paid by the sale of his property, became subrogated to the claims of the holders of the notes, and entitled to prove the amount of the notes against the joint estate; and that this demand enures to the benefit of his separate estate, which should be credited by the assignee with ratable dividends on the amount.

There are technical difficulties in the way of obtaining relief upon either of these theories. The assignee would not have been justified in applying the moneys of the joint estate to discharge a lien upon the property of the separate estate, even where the lien was created for the benefit of the firm; and if Foot as surety became subrogated to the rights of the holders of the notes, and therefore entitled to prove their amount, the rule which precludes a partner from proving his individual debt in competition with the joint creditors, would defeat the separate estate from deriving any benefit through the claim of Foot. But it seems clear, that the equities of the separate creditors can be worked out upon familiar principles, and a result attained, which. in view of the condition of the two estates, is highly desirable.

Where there are two classes of creditors, having a common debtor who has several funds, and one class of the creditors can resort to all the funds, while the other can resort only to part of them, the former shall take payment out of the fund to which they can resort exclusively, so that both classes may be protected; and if the former resort to the fund common to both classes, to the loss of the latter, the latter are entitled to be substituted to the extent of the deprivation to which they have been subjected, in the place of the former. This principle has been frequently applied where specific liens exist in favor of different creditors upon property of the same debtor; and the rule is the same, where the parties are creditors of different debtors, where, as between the debtors, equity demands that one of them should discharge the debt in exoneration of the other. Dorr v. Shaw, 4 Johns. Ch. 17; Story, Eq. Jur. §§ 642, 643; Ex parte Kendall, 17 Ves. 521; Neff v. Miller, 8 Barr. [8 Pa. St.] 347; Sterling v. Brightbill, 5 Watts, 229. The doctrine applies in all cases of marshalling equitable assets; and its application to assets in bankruptcy, which are to be administered upon equitable principles, is peculiarly appropriate.

In the present case, after the adjudication of bankruptcy, the holders of the notes might have surrendered the collaterals, and resorted to either of two funds to obtain payment; as creditors of the firm, they could have proved against, and shared in, the joint estate; and as creditors of Foot, they could have proved against, and shared in, his separate estate; and, if they had surrendered, the collaterals would have enured to the benefit of the separate estate, because the firm were the primary debtors and Foot was a surety. The holders of the notes could not have been compelled to elect as to which fund they should pursue;—the rule in England, which requires creditors of both the joint and separate estate in bankruptcy to elect, not obtaining here. Ex parte Farnum [Case No. 4,674]; Meade v. National Bank of Fayetteville [Id. 9,366]; Emery v. Canal Nat. Bank [Id. 4,446]. The joint creditors, therefore, could not have been heard to complain if the holders of the notes had chosen to obtain satisfaction out of the joint estate; and no equities exist on their part, to countervail those of the separate creditors of Foot. On the other hand, if the holders of the notes had surrendered their collaterals. and resorted to the separate estate of Foot by proving their claims in bankruptcy. the creditors of his separate estate would have been entitled to be substituted in the place of the holders of the notes, and allowed to prove the notes against the joint estate.

The rights of the parties are not changed because the holders of the notes satisfied them by a sale of the securities, instead of resorting to the joint estate in bankruptcy. By the course taken, the separate estate has been diminished to the extent that satisfaction might have been obtained from the joint estate; and to that extent the separate creditors have been deprived of a fund, in which they were entitled to equitable priority as against a class of creditors who had resort to another fund, which, as between the debtors, was the primary fund for payment. Upon the principles referred to, the separate creditors are to be substituted to the rights of the holders of the notes to enforce payment from the joint estate in bankruptcy. The technical satisfaction of the notes by the proceeds of the securities, does not stand in the way; for payment will not be permitted in equity to operate as an extinguishment as against

those equitably entitled to substitution in the place of the party receiving payment. Eddy v. Traver, 6 Paige, 521; Morris v. Oakford, 9 Barr [9 Pa. St.] 498; Richardson v. Washington Bank, 3 Metc. [Mass.] 536.

Applying these principles to the present case, a result is reached which does no injustice to either class of creditors; and which affords a signal illustration of the benign vigor of the rules of equity. The assets of the primary debtors will be appropriated to the ratable payment of all their creditors, and those of the separate partner to his creditors; while the holders of the notes, protected in the exercise of their rights, will have so enforced them as not needlessly to prejudice the rights of other creditors.

A decree is ordered that the assignee appropriate to the separate estate of Foot the surplus arising upon the sales of the securities, and such further sum as may arise from the dividends of the joint estate, as upon a debt proved against such joint estate of $18,-177, accruing as of the date of the sale of the securities.

## Case No. 4,907.

### In re FOOT et al.

[11 Blatchf. 530;[1] 11 N. B. R. 153.]

Circuit Court, N. D. New York. March 17, 1874.

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

Scott Lord, for assignee in bankruptcy.
George F. Comstock, for creditor.

WOODRUFF, Circuit Judge. The assignee of the bankrupts appeals from a decision of the district court in bankruptcy [case unreported], allowing, or refusing to strike out, the proof of debt against the bankrupts' estate, made by the Onondaga Salt Company, for a balance of account. The ground of objection to the allowance of such debt is, that the salt company have received an illegal preference, in payment, in part, of their account, which excludes them from any participation in the distribution of the assets. The salt company had, from time to time, sold to the bankrupts salt, on credit; but the proof here sufficiently shows that their last sales were upon the express terms of payment in cash on the receipt of the invoice by the bankrupts, to whom the salt was forwarded by canal, by the company. On the sale, the goods were placed on board a canal-boat, for transportation, and the invoice or bill thereof was forwarded to the bankrupts. The bankrupts did not remit the money in payment for the salt; on the contrary, the purchasers failed and became insolvent. But, the canal-boat containing the salt was stopped by ice on the canal, which interrupted navigation for the season, and the master of the canal-boat landed the salt and placed it in warehouse, and the warehouseman notified the purchasers of that fact, whereupon the purchasers gave to the warehouseman a conditional authority to sell the salt, i. e., if he could obtain a price which was specified. After the failure and insolvency of the purchasers, an interview was had by one of them with the officers or agents of the company, and he suggested the propriety of a resumption of the possession and ownership of the salt by the company, and, they acquiescing, he gave to the company an order therefor. The company then took possession of the salt, (excepting about fifty bushels thereof, which the warehouseman had in some manner disposed of,) and gave a credit therefor, at the price of the original sale, in extinguishment of an equal amount of charge in the general account, though without any other or special application of the payment. This resumption of possession and credit of the price, and the order given by the purchasers of the salt, in a state of insolvency, and when the company had reasonable cause to believe the purchasers were insolvent, is insisted upon as a giving and receiving part payment, in general account, by way of illegal preference, in fraud of the provisions of the