In re HENDERSON.

(District Court, N. D. West Virginia. January 6, 1906.)

BANKRUPTCY—ESTATE OF PARTNER—RIGHTS OF PARTNERSHIP CREDITORS.

Bankr. Act July 1, 1898, c. 541, § 5f, 30 Stat. 548 [U. S. Comp. St. 1901, p. 3424], which provides that "the net proceeds of the partnership property shall be appropriated to the payment of the partnership debts and the net proceeds of the individual estate of each partner to the payment of his individual debts," but that any surplus remaining of either estate shall be added to the other, limits the right of a partnership creditor to share in the estate of a partner in all cases to the surplus which may remain after his individual debts are paid; and there is no exception, even where the partnership has no assets and no solvent partner.

In Bankruptcy. On petition of the Euclid Park National Bank and others for revision.

Merrick & Smith and W. H. Wolfe, Jr., for petitioners.
Van Winkle & Ambler, for respondents.

DAYTON, District Judge. Petitioners are creditors, in large amounts, of the firm of Henderson, Barrett & Co., and allege said firm to be wholly insolvent and without assets of any kind or to any amount whatsoever; that the bankrupt H. C. Henderson was a member of this firm; and that they are entitled to share pro rata with his individual creditors in the distribution of his estate. This was denied them by the decision of the referee.

Thus is presented the sole question involved. It has been most ably and exhaustively argued, orally and by briefs, by counsel, and its determination is embarrassed and made difficult by the conflicting decisions of federal courts in different sections of the country. Section 5 of the Bankruptcy Act of July 1, 1898, c. 541, 30 Stat. 547, [U. S. Comp. St. 1901, p. 3424], provides in paragraphs: (a) that partnerships may be adjudged bankrupt; (c) that jurisdiction over one partner will give the court jurisdiction over all; (d) that the trustee shall keep separate accounts of the property of the partnership and of the individual members thereof; and (e) the court shall apportion the costs of administration between the partnership property and that of the individual members. Then paragraph "f" provides:

"The net proceeds of the partnership property shall be appropriated to the payment of the partnership debts, and the net proceeds of the individual estate of each partner to the payment of his individual debts. Should any surplus remain of the property of any partner after paying his individual debts, such surplus shall be added to the partnership assets and be applied to the payment of the partnership debts. Should any surplus of the partnership property remain after paying the partnership debts, such surplus shall be added to the assets of the individual partners in the proportion of their respective interests in the partnrship."

Counsel for petitioners earnestly insist that an "exception" is to be made to the rule laid down in the first clause above quoted, "where there is no partnership estate and no solvent partner," as is the case here, in which event "partnership creditors are entitled to share ratably with individual creditors in the individual assets of a bankrupt partner." They base this contention substantially on these

grounds: First. Upon clause "g" of said section 5, which is as follows:

"The court may permit the proof of the claim of the partnership estate against the individual estates, and vice versa, and may marshal the assets of the partnership estate and the individual estates so as to prevent preferences and secure equitable distribution of the property of the several estates."

Second. That such exception was recognized and upheld by the federal courts in construing similar provisions in the bankruptcy act of 1867, citing In re Downing, Fed. Cas. No. 4,044; In re Jewett, Fed. Cas. No. 7,304; In re Knight, Fed. Cas. No. 7,880; In re McEwen, Fed. Cas. No. 8,783; In re Pease, Fed. Cas. No. 10,881; In re Slocum, Fed. Cas. No. 12,950; In re Litchfield (D. C.) 5 Fed. 47; In re Blumer (D. C.) 12 Fed. 489; In re Lloyd (D. C.) 22 Fed. 88; In re West (D. C.) 39 Fed. 203. Third. That such exception accords with the general policy of the states, and especially that of West Virginia, in administering the estates of bankrupt partnerships and their individual members. In support of this many authorities are cited.

It is well to state here that the provisions of our present act touching this question have been construed, first, in Re Wilcox (D. C.) 94 Fed. 84, where Lowell, District Judge with much learning, has discussed the origin in the English courts of the rule, and its exceptions, for the distribution of the assets of partnerships and of their individual members, and their application in the courts of this country. The conclusion reached by him is that, under our present bankruptcy act, the "exception" contended for here is not applicable. This decision seems not to have been appealed from and may be therefore reasonably assumed to have been acquiesced in and followed by the courts in the First circuit. On the other hand, in Re Green (D. C.) 116 Fed. 118, Shiras, District Judge upholds the "exception," practically as contended for here; and this case seems not to have been appealed and may be therefore regarded as acquiesced in and followed by the courts of the Eighth circuit. The next case is In re Conrader (D. C.) 118 Fed. 676, where Buffington, D. J., upholds the "exception" and this case was appealed and is reported as Conrader v. Cohen, 58 C. C. A. 249, 121 Fed. 801, and the ruling of the District Court is affirmed and is thereby binding authority upon the courts of the Third circuit. Finally, In re Janes (D. C.) 128 Fed. 527, Hazel, District Judge, upholds the "exception"; but this case was also appealed and is reported as In re Janes, 67 C. C. A. 216, 133 Fed. 912. The Circuit Court of Appeals reversed the lower court and held no such "exception" existed, or could exist, under the explicit terms of our bankrupt act, and this ruling binds, therefore, the courts in the Second circuit.

So far as I can find, no ruling has been made by any of the judges in this circuit, and therefore I am free, amid such conflict of authority, to follow my own judgment, and, after long and careful consideration, that judgment is that the exception is not warranted. I reach this conclusion for these, among other, reasons: First. It is admitted to be an exception to a general rule, which rule in plain, clear, apt, and

unambiguous language is written in the law itself, while the exception is not; on the contrary, it must depend solely upon judicial construction, which, because it in effect provides a different method of distribution from that provided by the law itself, cannot be considered short of mere judicial legislation. It is to be recalled how easily the Congress, had it designed such exception to be made, could have incorporated it as such in the law itself. It cannot for a moment be presumed that the matter was overlooked. On the contrary, it is to be remembered that this bankruptcy act was as carefully considered a piece of legislation as any given us for years by that body. The Senate first passed what was known as the "Nelson" bill on the subject. The House of Representatives, after long discussion, passed, as a substitute, the "Henderson" bill carrying out substantially the provisions of the Torrey measure, which had been for several years prior discussed in legal associations and journals. The matter was finally referred to a conference committee composed of Senators Hoar, Lindsay, and Nelson on behalf of the Senate and Representatives Henderson, Ray (now judge of the Northern district of New York) and Terry on behalf of the House, lawyers as able as the country could afford, who after several months' deliberation reported a compromise which was passed without amendment and became the existing act. The fact that the courts had established such exception in the construction of the act of 1867, but with conflict of opinion, is one of the strongest reasons in convincing me that Congress never intended to recognize such exception, for knowing of the former conflict of opinion, and of the action of the courts under the former act in establishing it, instead of recognizing it, which could have been done in a few lines, it does not do so, but, in plainer, more simple, positive, and direct language, reiterates the rule, without exception or qualification, that partnership assets shall pay partnership debts, individual assets individual debts, and only surpluses shall be applied, the one to the other. The argument made that such exception is in accord, generally, with the law and practice in the states, only strengthens my view as to the purpose and intention of the Congress. Its members, coming from all the states and having full knowledge of such practice and law, would seem to have deliberately purposed that this uniform bankrupt act, which was to be the supreme law of the land, should not recognize such exception but, in effect, exclude it.

Second. Nor can I read paragraph "g" as giving any excuse for the establishment of such exception by judicial construction. Clause "f" states the precepts of the law; clause "g" relates to the procedure under it. The law in "f" demands that "the net proceeds shall be appropriated" as directed by it, while "g" provides simply that in carrying out these precepts, and as an aid in doing so, the court may do certain things, to wit, permit proof of claims of partnership estates against individual estates, and vice versa, and marshal the assets of such estates so as to prevent preferences and secure equitable distribution of such estates. Note the use in this paragraph of the word "estate" instead of the word "debt" as used elsewhere. It is

properly used and was designed to meet such cases as, for example, where the partnership estate might have a just claim against one of its individual members who had not paid into the partnership his full share or any part of the capital which he was legally bound to do, while the other members of the partnership perhaps had done so; or, vice versa, where the individual member, a bankrupt, had paid into the partnership fund all of his pledged capital, while other members had not. To meet such and other similar cases that might arise, I am convinced, was the sole cause and scope of this permissive clause in procedure, only mandatory in cases where the circumstances, in equity and good conscience, required its application. The necessity for this permissive provision in procedure is the more apparent when we read in clause "h" that, where all members of a partnership are not adjudged bankrupt, the partnership property is not to be administered in bankruptcy without consent of the solvent partners, a provision not in our former bankrupt laws. In such case, without this clause "g," would the bankrupt court have jurisdiction to determine any such questions as referred to above between the two estates that might arise in the adjustment of their respective rights; the one being administered by the court, the other by the solvent partners?

Finally, I do not believe any just criticism can be made of the legislative body for establishing this rule and refusing to incorporate the exception contended for to it, into the law. Judge Lowell, in Re Wilcox, supra, has shown how much difficulty, perplexity, and conflict have arisen, during more than three centuries, in the settlement of these joint and separate estates. Under such circumstances, Congress could well say that it was time, in this law which was to be supreme and uniform throughout the states, to settle the vexed controversy by a direct and positive, if arbitrary, rule. It is true in regard to all such rules that, under exceptional circumstances, they work hardships, but the ultimate good they accomplish largely counterbalances the evil. Who doubts longer the benefits of statutes of limitation?

The rule established here has the merit of simplicity and directness. It gives full and complete repose, and I submit it is as nearly equitable as any such rule can be. Under modern business conditions, a man can become partner in an unlimited number of partnerships of which, and of his connection therewith, his neighbor, who is trusting him upon faith of his individual merit and financial worth, can know nothing, and these partnerships with or without his knowledge may be, by bad or extravagant management, accumulating debt against him many times over the total value of his estate. These partnerships may be located in different localities far separated. For instance, he may be a partner in a "Eureka Gold Mining Company," in Alaska, an "Excelsior Construction Company" in New York, a "Superlative Fruit Company" in Florida—no one of which in name may disclose his connection therewith. Why is it not reasonable to protect, under such conditions, his neighbors at home who have trusted him, as against the creditors of these distant partnerships, who have in most cases credited such partnerships upon faith of the business they were doing and without knowledge of him or of his

connection therewith, until their bankruptcy occurs? Is there not a plain dividing line based on reason and sound equity? His neighbors trusted him with his personal property before them; the others trusted the partnership with its property in view. Why should not each class resort to the property that was the basis of their respective extensions of credit, without the one having any advantage over the other, and what matters it if the creditors of the partnership have been so foolish as to extend credit to it when it had no property, any more than where a man's neighbor has been just as foolish in extending credit to him personally when he had none? Has it ever been contended, in a case where a man has taken his personal property and invested it in a partnership so that he has nothing, that an exception should be judicially created which would permit his individual creditors, in a bankruptcy proceeding against the partnership, to come in and share pari passu with the partnership creditors, as against his interest therein? Why is not one proposition as fair as the other in good conscience, and why does not the simple rule established by Congress settle the question as fairly as it can be settled? Whether it does or not, of one thing I am entirely satisfied; and that is, that the rule itself cannot justly be more severely criticised than can be the "exception" contended for. This exception certainly is none the less arbitrary, and leads to no less absurd results. This was recognized by the courts creating it in construing the law of 1867. For example, in Re Blumer (D. C.) 12 Fed. 489, from the Eastern district of Pennsylvania, it was held:

"If, after deducting the portion of costs chargeable to the partnership estate, there is any balance of partnership assets, however small, the partnership creditors will not be entitled to share pari passu with the separate creditors in the distribution of the separate estates."

In other words, the application of this exception might well turn on the partnership possession of, say, 30 cents. Again, in Re Marwick, Fed. Cas. No. 9,181, it is held:

"If there be any joint fund, however small, such proof cannot be allowed, although such fund may have been created by the separate creditors purchasing some of the partnership assets, actually worthless, for the purpose only of creating it; for if there be a joint fund, the court cannot, under the statute, look behind the fact, to inquire how it has been produced."

In other words, under the operation of this exception, a contribution of a few cents, no matter by whom, to the partnership assets, would wholly prevent its application.

I affirm the ruling of the referee, expressing the hope, however, that the question will be taken to the Circuit Court of Appeals, in order that we may have a binding ruling in this circuit upon the matter.