### In re EFFINGER et al.

#### (District Court, D. Maryland. November 25, 1910.)

1. BANKRUPTCY (§ 342*)—RE-EXAMINATION OF CLAIMS—LACHES—WAIVER.

Where certain creditors of a bankrupt four months after the declaration of a dividend on a claim which had been allowed against the estate filed a petition objecting to the payment of any dividend on such claim until other creditors had been paid in full, which petition was referred to the referee and heard without objection on the part of the claimant, who appeared and offered testimony, he thereby waived the right to object on the ground that the petitioners had not acted in time and were estopped by laches.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 342.*]

2. BANKRUPTCY (§ 342*)—PARTNERSHIP—RE-EXAMINATION OF CLAIM OF PARTNER—RIGHT OF INDIVIDUAL CREDITORS TO BE HEARD.

Where creditors of the estate of a bankrupt partnership filed a petition for the reconsideration of a claim filed by one of the partners for the benefit of his individual estate and his trustee did not oppose such petition, creditors who have proved claims against the individual estate, and who are alone beneficially interested, are entitled to an opportunity to appear and be heard.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 342.*]

In the matter of Charles H. Effinger and George B. Aiken, copartners as Effinger & Aiken and individually, bankrupts. On exceptions to referee's report on claims of Charles H. Effinger against the partnership estate. Exceptions sustained conditionally.

Hyland P. Stewart, for claimant Chas. H. Effinger.
Benjamin Rosenheim, for trustee.
Myer Rosenbush, for excepting creditors.

ROSE, District Judge. On February 9, 1909, the partnership and each of the partners individually were adjudicated bankrupts. The individual estate of neither of the partners will suffice to pay his individual debts. The partnership debts exceed the partnership assets.

On April 12, 1909, the bankrupt Effinger in his own name filed a claim against the partnership estate for $6,954.97, the aggregate amount of three sums of cash which between October 19, 1906, and December 3, 1907, he had lent to the firm. He claimed interest on such principal sum from June 1, 1908, up to which last-mentioned date interest had been paid by the copartnership. In November, 1909, the same bankrupt filed a second claim against the partnership estate, in substance as follows:

| | |
|---|---:|
| Rent from claimant's individual property at Lexington, Va., from February 5th to date............................................... | $ 81.25 |
| To cash realized to Henry Brunt, trustee in bankruptcy, from the sale of the individual property of Charles H. Effinger at Lexington, Va., and paid over to the National Exchange Bank of Baltimore in partial liquidation of a debt due by the copartnership to said bank............................................... | 5,800 00 |
| Total ............................................... | $5,881 25 |

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Each of these claims were filed merely as the individual claim of Charles H. Effinger. In neither is it in any wise stated that it was on behalf of his individual estate. With each was filed a power of attorney by which the bankrupt Effinger assumed to appoint his counsel, Mr. Stewart, his attorney, with power to vote at creditors' meetings, to receive dividends, etc. The referee has allowed the first claim for $6,954.97 and $289.79 interest, or a total of $7,244.76, and has awarded a first and second dividend thereon for sums aggregating $2,786.30 to the bankrupt Effinger. He has allowed the second claim for $5,510.27, and has awarded dividends thereon to the same bankrupt aggregating $2,119.22. In each of these accounts there was attached to the award of dividends upon each claim a note that the dividends were "to be credited to the individual estate of Charles H. Effinger (see section 5g of the bankruptcy act) and held by the trustee." By a first trustee's account in the individual estate of the bankrupt Effinger, which account was filed simultaneously with the second account of the partnership estate, the dividend on these two claims, which together total $4,905.52, are, after deducting some $97 of expenses, distributed between two individual creditors of the bankrupt Effinger. One of these creditors is Hutzler Bros. Their claim is $42.34 for merchandise furnished the bankrupt or his family. The other is Lucy W. Massie, a niece of the bankrupt. She claims $7,833.87 as a balance due her for services rendered the bankrupt as housekeeper during a period of many years under a verbal agreement fixing her compensation at $50 per month. Certain partnership creditors are objecting to the allowance of these dividends to the bankrupt Effinger and to the distribution of them as assets of his individual estate.

Three questions are raised:

First. Have not the partnership creditors estopped themselves by laches from now objecting to the allowance of the first claim and to the award of dividends thereon?

Second. Should the first claim have been allowed?

Third. Should the second claim have been allowed?

The first of these must now be disposed of. Is it now too late for the objecting partnership creditors to question the award of dividends upon the first claim of the bankrupt Effinger? It appears that, when the claim was first presented, objection to it was made by the same creditors now before the court. The referee allowed it. No exception was taken to his so doing. The trustee's account which awarded the first dividend to the bankrupt Effinger was filed June 25, 1909. It was not excepted to so far as this claim in question was concerned and was finally ratified July 7, 1909. Some four months afterwards, on November 10, 1909, the objecting creditors filed a petition in this court. In it they said that the first claim of Effinger had no right to participate in the distribution of the firm assets until all the partnership creditors had been paid in full. They objected to the allowance out of the firm assets of a dividend on that claim. They claimed that the amount of such dividend should be distributed among the partnership creditors. On the day this petition was filed Judge Morris referred it to the referee. The order directed the referee to take testimony and to report his findings of law and fact. In July, 1910, the referee reported that

the first claim of Effinger had been properly allowed. The objecting creditors promptly excepted to the referee's conclusions. These exceptions are now before the court.

I am of opinion that under all the circumstances of this case the petition of November 10, 1909, was filed in time. By it the creditors uniting in it were entitled to challenge the allowance of Effinger's first claim. There is, of course, no question that their objections to his second claim were seasonably made. Ordinarily a creditor who objects to the allowance of a claim or seeks to have revoked an allowance once made applies to the referee. If the referee decides against him, he files with that officer his petition setting forth the error, and the referee forthwith certifies the question presented to the judge. In this district a rigid adherence to this practice has not been insisted on. It may well be that local usage cannot modify the rule of practice which it is insisted by Effinger is indicated or prescribed by General Order No. 27. It is not necessary to pass on that question in this case. Those orders are after all merely rules of practice. They may give rights to the parties which cannot be taken from them without their consent, but the person for whose benefit they are made can waive their protection. He may do so either expressly or by implication. I have no hesitation in saying that Effinger has waived any right he might otherwise have had to object that the creditors had not acted in time. He never sought to have the court reconsider the order of November 10, 1909, referring the creditors'. petition to the referee. The referee's report shows that Effinger appeared before him by counsel and offered testimony and was heard on the facts and on the law. It dos not appear that any objection was made to the reopening of the question of the allowance of the claim, nor was any assertion then made that neither the court nor the referee any longer had any jurisdiction over the matter. The failure to make such objection has the same effect as has the general appearance of a defendant sued out of his district, or the action of a plaintiff who without objection goes on with his case in the federal court to which the case had been removed by a defendant, although the petition for removal had not been filed in time. Matter of Moore, 209 U. S. 490, 28 Sup. Ct. 585, 706, 52 L. Ed. 904; Martin's Administrator v. B. & O. R. Co., 151 U. S. 673, 14 Sup. Ct. 533, 38 L. Ed. 311.

The general jurisdiction of the court over the subject-matter of reopening the allowance of claims is given by the statute, which expressly says that claims which have been allowed may be reconsidered for cause and allowed or rejected in whole or in part, according to the equities of the case, before, but not after, the estate has been closed. Section 57k, Bankr. Act July 1, 1898, c. 541, 30 Stat. 561 (U. S. Comp. St. 1901, p. 3444). Section 57l makes provision for recovering dividends which have been paid creditors on claims, the allowance of which has subsequently been reopened and revoked.

It is, however, unnecessary to pursue the discussion because the only objection to a reconsideration of the allowance of the claims is being made by the bankrupt Effinger, who has no interest in the matters before the court, and therefore cannot be heard upon them. Since the hearing of these questions on the 2d of November, 1910, the

bankrupt has filed a petition in which he says he presented these claims for the benefit of his individual estate alone, and not for his own benefit, and that his trustee has always objected to the allowance of these claims. The petition prays that the court require the trustee formally to claim the benefit of such dividends or that the court pass an order ratifying and approving the proceedings of the bankrupt in the matter of these claims, and that the court appoint counsel to represent the individual estate of the petitioning bankrupt. The petition was denied. The time in which claims against the individual estate could in ordinary course be filed has long since expired. As already stated, two such claims, and only two, have been filed. The holders of these claims are the only persons who have any interest whatever in maintaining the allowance made by the referee. If they wish to uphold the allowance of such claims, they should be heard. It is not believed that there can be any technical difficulties which can prevent them from having their day in court. It certainly would be the duty of the court to use all its discretionary powers to see that they had a chance to make good their case if they have one, and if they want to set it up. Some form of procedure could surely be found in which they could under the usual liability of litigants for costs try their right to have dividends allowed on the bankrupt's claims against the partnership estate, and to have such dividends distributed between them. But although they have filed their claims, and although the one of them whose claim is of large amount is represented by an attorney, neither one of them has made any application to the court in the premises. Whatever may be doubtful in this case, it is clear that the bankrupt Effinger has no interest in the matter and is charged with no duty concerning it. He therefore is not entitled to be heard upon it.

Either the sums allowed as dividends on the claims in question should be divided pro rata among the individual creditors or among the partnership creditors. The latter are in court asserting that they are entitled to them. The individual creditors are also in court to the extent at least that their claims have been filed and allowed. Although the firm creditors asserted their claims something more than a year ago, the individual creditors have thus far been silent. Ordinarily it might well be held that their silence was equivalent to acquiescence in the justice of the contention made by the firm creditors. I am not prepared to take that view under all the circumstances of this case. If the two claims filed in the name of the bankrupt Effinger are entitled to dividends out of the partnership estate, Miss Massie will receive some $4,700, which will otherwise be distributed among the firm creditors. I do not believe that either Miss Massie or the firm creditors should under the circumstances be deprived of the right to try out on their merits the interesting and important questions upon which the ultimate disposition of so considerable a sum of money depends, although neither Miss Massie nor the firm creditors have in all respects hitherto been as vigilant in asserting their rights as they might and perhaps should have been. It may be that neither of the individual creditors will care to oppose the contentions

of the partnership creditors. That is for them to say. I do not feel that I should go further in this matter until their attention has been specifically called to it, and · until they have notice· that, unless they .appear to oppose ·the contentions of the copartnership creditors, the latter will be upheld because unopposed.

I shall therefore sign an order sustaining the exceptions of the objecting creditors to the referee's report and to the accounts, and directing that no dividend shall be allowed upon either of the claims in question until after the partnership claims have been paid in full, unless the individual creditors of the bankrupt Effinger or one of them shall within 15 days from the date of the order apply for leave of this court to enter her or their appearance, and to be heard in opposition to the passage of such order. Such leave, if applied for, will be granted on such terms as will secure to both parties a hearing on the merits unembarrassed by any question of laches or delay.

It will give to the individual creditors the opportunity of asserting any rights they might in any way or in any name have asserted or have caused to be asserted against the copartnership estate.