In re EFFINGER et al.

(District Court, D. Maryland. January 9, 1911.)

1. BANKRUPTCY (§ 351*)—PARTNERSHIP—CLAIMS OF PARTNER—ALLOWANCE.

Bankr. Act July 1, 1898, c. 541, § 5g, 30 Stat. 548 (U. S. Comp. St. 1901, p. 3424), provides that the court may permit proof of the claim of a partnership estate against the individual estate of the partners, and vice versa, and may marshal the assets of the partnership estate and individual estate so as to prevent preferences and secure the equitable distribution of the property of the several estates. *Held* that, though a partner who has lent money to the firm in excess of the amount he was bound to contribute as his share of the capital was entitled to prove a claim therefor against the partnership estate in bankruptcy, he is not entitled under such section or at all to share in the distribution of the partnership estate until all the partnership creditors are paid.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 563, 564; Dec. Dig. § 351.*]

2. BANKRUPTCY (§ 351*)—PARTNERSHIP—ESTATE OF INDIVIDUAL PARTNER.

An insolvent partner's individual estate does not contribute to the payment of partnership debts until after all his individual creditors have been paid in full.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 563, 564; Dec. Dig. § 351.*]

3. BANKRUPTCY (§ 351*)—PARTNERSHIP—SURETYSHIP OF PARTNER—NATURE OF INDIVIDUAL ESTATE.

Where an individual partner became surety on the firm's note to a bank, and also mortgaged individual real estate as additional security. and on bankruptcy intervening the bank proved its entire claim against the estate of the firm and received dividends thereon, but before settlement of the partnership estate the bank foreclosed the mortgage on the real estate and obtained an amount which with the dividends more than paid its claim in full, the estate of the bankrupt partner was entitled to an allowance out of the firm property as against firm creditors equal to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the amount remaining of the bank's dividends after taking therefrom an amount which, with the proceeds of the mortgaged property, was sufficient to satisfy the bank's claim.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 563, 564; Dec. Dig. § 351.*]

In Bankruptcy. In the matter of Charles H. Effinger and another, copartners trading as Effinger & Aitken. On exceptions of partnership creditors to the allowance of dividends on certain claims preferred by the bankrupt Effinger, on behalf of his individual estate as against the partnership creditors. Sustained.

Benjamin Rosenheim, for trustee.
Myer Rosenbush, for excepting creditors.
Hyland P. Stewart, for bankrupt and creditor of individual estate.

ROSE, District Judge. Upon the handing down of the foregoing opinion (184 Fed. 724), an order was entered in conformity therewith. Miss Massie was the only individual creditor of the bankrupt, Effinger, for any considerable sum. She availed herself of the permission given by the order, and intervened. It becomes necessary, therefore, to decide whether either of the two claims mentioned in the opinion heretofore delivered is entitled to participate pro rata with the firm creditors in the distribution of firm assets. The first of these claims is for money advanced to the firm by the partner, Effinger, in excess of his agreed contribution to its capital. The learned referee allowed the claim by reason of what he conceived to have been the change in the previously existing law effected by clause 5g of the present bankruptcy act. Act July 1, 1898, c. 541, 30 Stat. 548 (U. S. Comp. St. 1901, p. 3424). That clause reads:

"The court may permit the proof of the claim of the partnership estate against the individual estates, and vice versa, and may marshal the assets of the partnership estate and individual estates so as to prevent preferences and secure the equitable distribution of the property of the several estates."

He cites in support of his conclusion the statement of Collier on Bankruptcy, p. 129, "Any claim which one member of a firm has against it may be proven against the firm and vice versa," and what is said in Lowell on Bankruptcy at page 361, to the effect:

"Under the decisions in England and the United States, a partner cannot prove against the bankrupt firm or the separate estate of another partner except for a debt totally disconnected with firm affairs, unless all the joint debts are paid. because, as it is said, he would be proving against his own creditors. An exception is made of a partner who has fraudulently abstracted firm property. In that case the other partners are allowed to prove against his estate. This rule of law so far as it relates to cases where the firm and its partners are bankrupt is abrogated by paragraph 'g,' which allows the proof of a claim of a partner's estate against the partnership estate, and puts the partners on the same footing as creditors with regard to proof against the firm when both are bankrupt."

No authorities, other than the language of the act, are cited by either of the authors above quoted.

· The referee also says that Remington on Bankruptcy, § 2237, is to the same effect. What Remington did say in those sections of his original edition is:

"Partnership debts are 'provable' against the individual estates of the several members, either in partnership cases or in individual cases; and likewise individual debts are 'provable' against the partnership share of the individual members either in partnership or individual cases."

But he adds:

"The priority of right to share in the particular fund does not affect the provability."

I think the learned referee overlooked the significance of the last clause of the above quotation from Remington, and has put a broader construction upon what was said by the other text-writers cited by him than was intended by them.

The claim of a partner for money lent to the partnership in excess of the amount he was bound to contribute as his share of the capital is unquestionably provable against the partnership estate, but it cannot share in the distribution of that estate until all the firm creditors are paid. In the third or supplementary volume of Remington, at page 669, § 2247¼, the learned author says:

"Nor is a partner's contribution to the capital of the firm a provable debt against the partnership assets. · * * * But his excess of contribution may be proved against the other partner's individual estate."

We shall see that the cases hold that section 5g authorizing the proof of such claims does not intend to change the previously existing law as to the priority of right to share in the distribution of assets. It is not true, as is contended by the counsel for the individual creditor in this case, that such a construction deprives clause 5g of all sgnificance. In point of fact its enactment abolished a technical rule of bankruptcy procedure which in the past had at times worked real injustice.

An English partnership was dissolved in April, 1864. In March, 1865, the partner, who subsequently became bankrupt, became indebted to his former partner in the sum of £59. Two months later the bankruptcy took place. The solvent partner tendered proof for the debt of £59. The evidence showed that the assets were £50,000. while the debts did not exceed £30,000. For the solvent partner it was said:

"The debt for which it is tendered is quite distinct from any partnership debt, having been incurred since the partnership was dissolved. The joint creditors are amply secured by the joint estate. We are quite willing that the dividends should be kept in suspense, but the proof ought to be admitted. Otherwise this will be a debt for which the creditor will have no remedy whatever, although, when all the joint debts shall have been paid, nothing whatever will distinguish it from any other debts."

It was held by Lord Justices Turner and Cairns, as expressed by the latter:

"I do not think the fact, if it be so, that the joint estate is amply sufficient to pay the joint debts, makes any difference; it is merely tantamount to saying that there is ample security. The joint creditors are entitled to any surplus of the separate estate and if this proof, as it might, were to diminish that surplus, the creditor would be competing with his own creditors." Ex parte Bass, 36 Law Journal, Bankruptcy, 39.

Under our present law claims cannot be proved subsequent to one year after adjudication. Except for section 5g, it would be impossible to prove claims of the partnership estates against the individual estates, or vice versa, until the individual or the firm debts, as the case might be, had been paid in full. Before this could take place, the time in which the claims could be filed at all would usually have expired. The act, after expressly permitting the proof of such claims, says:

"The court may marshal the assets of the partnership estate and individual estates so as to prevent preferences and secure the equitable distribution of the property of the several estates."

There is no indication in this clause, taken as a whole, that there was any intent on the part of Congress to change the rules of distribution which had heretofore been held to be equitable. The intent was simply to remove all arbitrary rules of practice and procedure which had interfered with the distribution of the estates in accordance with the settled principles of equity. Such was the conclusion reached by Judge Dayton. He said:

"Clause 'f' states the precepts of the law. Clause 'g,' relates to the procedure under it. The law in 'f' demands that 'the net proceeds shall be appropriated' as directed by it, while 'g' provides simply that in carrying out these precepts, and as an aid in doing so, the court may do certain things, to wit, permit proof of claims of partnership estates against individual estates, and vice versa, and marshal the assets of such estates so as to prevent preferences and secure equitable distribution of such estates." In re Henderson (D. C.) 16 Am. Bankr. Rep. 91, 142 Fed. 588, affirmed by the Circuit Court of Appeals for the Fourth Circuit, sub nomine Euclid National Bank v. Union Trust Co., 17 Am. Bankr. Rep. 838, 149 Fed. 975, 79 C. C. A. 485.

The books of many partnerships show that one or more of the partners have not drawn from the firm all they were entitled by the articles to take out of it. Upon the sum so remaining the firm usually pays interest. If the contention now made on behalf of Miss Massie is sound, the individual creditors of every such partner have a right, in the event of the insolvency of the firm and of that partner, to insist not only upon the proof and allowance of a claim against the partnership estate for such excess contribution, but that such claim shall be permitted to participate on equal terms with the firm creditors in the distribution of the firm assets. The present bankruptcy law was passed more than 12 years ago. Under it thousands of partnerships have been wound up. In each of hundreds of these there must have been a partner whose relation to his firm was at the time of bankruptcy legally indistinguishable from that borne by Effinger.

So far as I have been able to discover, the reports do not disclose more than five cases in which it has been claimed that the partner or his individual estate could participate in the distribution of the firm assets in competition with firm creditors. Wherever the claim has been made, it has been denied. The counsel for Miss Massie says that only two of these cases are in point because only in that number was the partner as well as the firm insolvent. Admitting this to be so, it remains true that in hundreds of cases it has been the interest of some

one to make the contention now made. It has been set up only twice. In each of these cases it has been denied by the court. It is scarcely possible to think of any set of circumstances which could constitute practically a more conclusive construction that the clause of the statute relied on does not mean what the individual creditor in this case claims that it does mean. The first of the two cases above referred to was decided by that eminent authority on bankruptcy law, Judge Lowell. Brown and Denning were partners. Both were insolvent. Brown sold his interest in the partnership to Denning, taking promissory notes for the amount to be paid. Two months later Denning was adjudicated a bankrupt. Brown offered to prove the promissory notes so that he might share in the distribution of the estate. Judge Lowell decided that this he could not do. "There are joint creditors in this case who have proved, and, until the claims of the joint creditors are settled, Brown cannot share in the distribution of his former partner's estate." He added:

"There is nothing in section 5g of the act to change this well-established rule. Some courts of bankruptcy in this country have held that the distribution of joint estate among joint creditors, and of separate estate among separate creditors, is confined to cases where the commission is joint. The contrary was held in this court in Re Wilcox [D. C.] 2 Am. Bankr. Rep. 117 [94 Fed. 84]. Moreover, section 5g of the bankruptcy act was intended, I believe, to clear up the whole matter, and to permit the court to deal with conversions of this kind so as not only to prevent preference in the technical meaning of that word, but also so as to secure the equitable distribution of the property of the several estates." In re Denning (D. C.) 8 Am. Bankr. Rep. 133, 114 Fed. 219.

The whole question was again fully considered by Judge McPherson in the Eastern District of Pennsylvania in the case of In re Rice (D. C.) 21 Am. Bankr. Rep. 205, 164 Fed. 509. In that case, as in this, the partnership and each individual member thereof was insolvent. Rice, one of the partners, filed a claim against the partnership for $5,210.07; the claim being based on four promissory notes alleged to be for moneys advanced to the firm. The referee held that the claim was not provable against the partnership estate. He therefore disallowed and expunged the claim. Judge McPherson said:

"No doubt the claim of Joseph A. Rice against the firm of which he was a member is an asset of his individual estate, but it is an asset with a particular disability, and in this respect it differs from the claims of other partnership creditors. Its disability consists in the fact that, according to the well-settled rule governing the marshaling of partnership and of individual assets, it cannot participate in the distribution of the partnership assets until other partnership creditors have been satisfied in full. For this reason, the individual creditors of the claimant cannot profit by it as completely as if he were an ordinary creditor of the firm, and not a member also. But nothing is taken away from the individual creditors to which they are equitably entitled, because the claimant himself could not share in the distribution of the partnership assets pari passu with other partnership creditors. To sustain the claimant's position would give to his individual creditors a more extensive right against the bankrupt firm than he himself possesses, and would thus do violence to the rule that the individual creditors succeed only to such equity in the firm assets as belongs to their debtor himself."

The court said that, if the individual creditors desired that the claim should be formally allowed with the qualification that it should not be

permitted to share in the distribution of the assets until such partnership creditors as were not members of the firm had been paid in full, he would modify the referee's order so that such qualified allowance could be made. I find no authority which is inconsistent with the express rulings made in the two cases above cited. There are at least three that are in harmony with them.

In a case decided by the Circuit Court of Appeals for the Third Circuit, the facts were that a corporation entered into such relations with individuals that, had it itself been an individual, it would have become their partner. By the terms of the agreement among them, it contributed to the partnership capital the sum of $15,000. It lent the firm $10,700 more. It sold and delivered goods to the partnership to the value of an additional $5,500. It claimed that it was entitled to prove for these two sums of $10,700 and $5,500, respectively. The court said:

"The $15,000 which it is admitted was 'advanced in pursuance of the agreement, and which was put in at the risk of the business,' was expressly omitted from the claim. But the distinction suggested by this concession rests upon no legal foundation. The moneys advanced in excess of the amount agreed to be contributed were, it is true, in many, if not in all, instances called 'loans,' and the merchandise supplied was no doubt regarded by the parties themselves as having been 'sold,' and it may well be conceded that upon any accounting between the partners the appellant would, after satisfaction of the firm debts, be entitled to priority of credit for its surplus advances of either kind; yet as the proof proposed would, if allowed, have reduced the fund to which the general creditors of the firm were constrained to look for the partial payment of their claims, the law imperatively required its rejection. Whatever may have been the understanding of the parties, or their respective rights inter se, there can be no doubt that in fact and in law not only the $15,-000 agreed to be contributed, but also the additional money advanced and the goods supplied, were, as to creditors, embarked in the business of the firm. They augmented its capital and enhanced its credit, and therefore could not in any manner be exempted from liability for its debts." Wallerstein v. Ervin, 7 Am. Bankr. Rep. 256, 112 Fed. 124, 50 C. C. A. 129.

In the Northern District of Iowa, Judge Shiras held, in Re John A. Carmichael (D. C.) 2 Am. Bankr. Rep. 815, 96 Fed. 594:

"That, when one of the partners bought claims against the partnership, they were extinguished as claims against the partnership, and remained merely claims of the partner against his individual copartners for their contribution."

The general rule of law is unquestionably that there is no individual or separate estate in firm property except in the residuum after the payment of the firm debts. Houseal & Smith's Appeal, 45 Pa. 487. The rule is that, as between the partners themselves, the share of each in a joint fund must be subject to any demand of the other upon the partnership. The whole joint fund as it exists at the time of the bankruptcy shall be applied in payment of the joint debts before any demand arising between the several partners can be attended to. Ex parte Hargreaves, 1 Cox, Chancery Cases, 439.

Much reliance has been placed by the learned counsel for Miss Massie upon that line of decisions beginning with In re Wilcox (D. C.) 2 Am. Bankr. Rep. 117, 94 Fed. 84, which hold to the entity theory of partnership relations. He argues that that theory requires that a partner shall have the same right to prove against a partnership for a

loan made to him that a stockholder in a corporation would have to prove against the corporation for the sums lent by him to it. The answer is that upon no theory of the partnership relation does the partner occupy the same position towards it and its creditors that a stockholder in a corporation does towards the corporation and its creditors. This is not denied, but it is urged that that difference affects only the case of a solvent partner. He cannot prove against the copartnership because any money that he would get from the copartnership estate he must return to the copartnership creditors for whose debts he is liable.

It is said that the rule fails when the reason for it does not exist. An insolvent partner's individual estate does not contribute to the payment of partnership debts until after all his individual creditors are paid in full. It is argued that it follows that, if he has advanced money to the partnership beyond his agreed contribution to its capital, his individual creditors are entitled, not only to have his claim against the partnership proved and allowed, but to have it participate in the distribution of the firm assets on equal terms with the other firm creditors. This argument is avowedly based on the consequence supposed to be deducible from the principles laid down in Re Wilcox, and in the cases which have followed it. The learned judge who decided the Wilcox Case as we have seen declared, in Re Denning, that the contentions here made are not good law. Partnership creditors have a right to insist that assets which have been put by a partner into a firm and which are found in the firm at the time of its bankruptcy shall as against him and his individual creditors be held to be partnership property. A partner cannot swell the assets of his firm by contributing money or property to it, and then, when the firm becomes insolvent, assert, either in his own interest or that of his individual creditors, that what he had put into the firm was a mere loan to it, and was not part of its assets. If the contention of the individual creditor in this case is sound, little reliance could in practice be placed on partnership statements. It takes very little knowledge of human nature and very little experience in a court of bankruptcy to convince one that few partnerships when called on for statements by banks, creditors, and mercantile agencies would include in the amounts owing by them sums due to their individual partners. They would feel that those claims stood on a very different footing from their other liabilities. It is now asserted that, when bankruptcy came, such liabilities would be entitled to share equally with such other debts in the distribution of the firm assets. Individuals engaged in business not infrequently omit from their statement of liabilities sums due to their near relatives. Then bankruptcy comes. The claims of their relatives are proved. The bankrupt is asked why he omitted them from his statements. He answers, and doubtless with much truth, that he left them out because he felt that they were not like the other claims against him, in that he could have the use of the money represented by them so long as he wanted it. In many cases it is very hard to tell whether a claim presented by a near relative or connection of the bankrupt should or should not be allowed. Sometimes it is disallowed because the confidence between the parties has been so great that no sufficient evidence of the loan has ever been giv-

en. Sometimes the evidence is suspiciously perfect. The claim is necessarily allowed. In point of fact, it must frequently happen that it was fraudulent. The court which allowed it because on the evidence before it it could do nothing else may have had at the time a very strong suspicion that if all the facts had been known it would have been disallowed. If a partner should be a creditor of his firm in such sense that his individual estate could participate in the event of bankruptcy equally with the other firm creditors in the distribution of the firm assets, there would be many cases in which such doubtful claims would be made against the individual estate of the partner. It would be seldom that he would be disposed to give any assistance to the trustee in resisting them. The construction which the practice in hundreds of cases has put upon the act, the construction which has been given to it by the courts whenever the precise question here at issue has been raised, and sound policy are at one in holding that the claim of a partner against his firm for an excess contribution to its capital cannot be permitted to participate in the distribution of the firm assets until after all the partnership creditors have been paid in full.

The questions raised by the controversy as to the second claim presented on behalf of the individual estate of the bankrupt Effinger are different. The partnership had borrowed money from the National Exchange Bank and had given its promissory notes therefor indorsed by each of the partners individually. To secure his indorsement, the bankrupt, Effinger, had given to the bank a deed of trust upon real estate in Virginia belonging to him. At the time of the adjudication there was due to the National Exchange Bank on the notes so indorsed the sum of $6,386.21. The Virginia property covered by the deed of trust was sold, and, after deducting the expenses of sale, the net proceeds of $5,500 was applied by the bank on account of the indebtedness represented by the notes. The bank proved its claim for the full amount against the copartnership estate, and was allowed thereon in the first account the full dividend distributed to other creditors. The amount actually received by the bank as this first dividend was $752.58. A second dividend at the same rate allowed the other creditors would have yielded the bank $1,703.53. Before the second account was stated, it had already received the first dividend of $752.58 and $5,500, the net proceeds of the sale of the Virginia property. There was only therefore $133.63 due to it, which accordingly was all the second account awarded. The difference between $1,703.53 and $133.63, $1,569.90, was thus in effect contributed by the individual estate of Effinger to the copartnership estate. The referee, however, has allowed the individual estate of Effinger on account of this claim dividends aggregating $2,582.90. Put in another way, the copartnership owed on account of its transactions with the National Exchange Bank $6,386.21, and no more. The aggregate of the two dividends awarded the firm creditors was at the rate of 38.45453 per cent. A dividend at this rate upon the bank's claim of $6,386.21 would have amounted to $2,456.11. There has been awarded to the bank under the two accounts above stated $886.21 and the referee has, as above stated, allotted dividends to the individual estate of Effinger to the amount of $2,582.90, so that, if the referee's account shall be confirmed, the result will be

that the firm estate will pay out on account of this indebtedness of $6,-386.21, $3,469.11, or $1,013 more than the ratable dividend on the total indebtedness of the firm growing out of the transactions in controversy. This is obviously error. The individual creditor relies on the right of the individual estate to be subrogated to the rights of the bank. One who is subrogated to the rights of another may take the whole or a part of those rights. He cannot get more rights than the other had.

Banks almost habitually, and other creditors not infrequently, require firm paper to be indorsed by the individual partners. Very often the individual partners do what Effinger did in this case—pledge as further security some specific portion of their individual property. I have been referred to no case, and in my own researches have discovered none, in which as a result of the individual partner assuming liability for the firm debt it has been held that the sum total of the firm obligations has been thereby increased. On the other hand, I cannot agree with the contention of the partnership creditors that the claim of the individual estate should be altogether rejected. The court is directed to marshal the assets of the partnership estate and the individual estate so as to prevent preferences and secure the equitable distribution of the property of the several estates. The bank had the right to prove its claim in full against both the individual estate and the partnership estate, but, as between the individual estate and the partnership estate, the latter was primarily liable. Had the partnership estate been distributed in full before the real estate in Virginia was sold, the bank would have received $2,546.11 as dividends on its claim against the partnership estate. When the property in Virginia was sold and produced the sum of $5,500 net, the bank would have been entitled to retain of that sum the difference between its full claim, $6,-381.21, and the dividends received by it from the partnership estate, $2,456.11, or $3,930.10. The remaining $1,569.90 would have been the undisputed property of the individual estate. The mere fact that the individual property in Virginia was disposed of before the partnership assets were finally distributed must not be allowed to make any difference in the rights of the parties.

Section 5g allows the filing of claims of the partnership estate against the individual estates and vice versa, and removes all technical obstacles in the way of bringing those claims before the court to be dealt with as justice and equity require. Even under Act March 2, 1867, c. 176, 14 Stat. 517, a like equity was recognized and was worked out in spite of the technical difficulties since removed by section 5g. A copartnership borrowed money on a promissory note. One of the partners indorsed the note individually, and pledged securities belonging to him for the debt. After the bankruptcy the holder of the note sold the securities and realized $18,281, being $104 in excess of the amount due upon the notes. Judge Wallace ruled that the matter should be adjusted in precisely the same way as it would have been had the creditor first proved his claim against the partnership estate and received his dividend therefrom, had then applied it upon his indebtedness, sold the individual securities, paid himself the balance remaining due to him out of their proceeds, and turned over all that remained to the individual estate. In re Foot, 9 Fed. Cas. 355. A some-

what similar case was In re Hind & Son, L. R. Ireland, 23 Chancery, 217. The same principle has been approved under the present law by the Supreme Court of the United States in Hiscock v. Varick Bank of New York, 206 U. S. 28, 27 Sup. Ct. 681, 51 L. Ed. 945.

It follows, therefore, that the exceptions of the partnership creditors to the allowance made by the referee of dividends upon the first and second claims preferred by the bankrupt Effinger on behalf of his individual estate must be sustained with costs. The accounts will be remanded to the referee, with directions to state a new account in such manner as shall allow upon the claim of the National Exchange Bank a dividend of the same percentage on its entire claim as has been or shall be allowed all other partnership creditors. So much of said sum so allowed on said claim as shall exceed the amount the National Exchange Bank is entitled to receive after crediting upon its claim the sum already paid it as a first dividend and the $5,500 received from the sale of the individual property of the bankrupt, Effinger, shall be distributed to the individual estate of the said bankrupt.